# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TAMARA TURNER**
        **Plaintiff,**

    **v.**                                    **Case No. 20-C-998**

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration**
        **Defendant.**

---

## DECISION AND ORDER

Plaintiff Tamara Turner seeks judicial review of the denial of her application for social security disability benefits. Plaintiff alleged that she could no longer work due to a variety of physical and mental impairments, but the Administrative Law Judge ("ALJ") assigned to the case concluded that plaintiff could still perform a range of unskilled, sedentary work. Plaintiff argues that the ALJ (1) failed to adequately account for certain mental limitations found by the agency's psychological consultants and (2) erred in evaluating her migraine headaches. I conclude that the matter must be remanded for further proceedings based on plaintiff's first argument. I set forth the applicable standards of review before summarizing the facts of the case and then addressing plaintiff's arguments.

## I. LEGAL STANDARDS

### A. Disability Standard

Social security regulations set forth a five-step, sequential test for determining disability. See 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the

claimant is working, i.e., engaged in "substantial gainful activity." If so, the ALJ will find the claimant not disabled. Id. § 404.1520(a)(4)(i).

If the claimant is not working, at step two the ALJ determines whether she suffers from any "severe" physical or mental impairments. Id. § 404.1520(a)(4)(ii). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. Id. § 404.1520(c). If the claimant has no severe impairments, she will be found not disabled.

If the claimant has severe impairments, at step three the ALJ determines whether any of those impairments qualify as conclusively disabling under the agency's "Listings." Id. § 404.1520(a)(4)(iii). To meet or equal a Listing, "the claimant must satisfy all of the criteria of the listed impairment." Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999). For instance, most mental impairment Listings require the claimant to demonstrate at least two "marked" limitations or one "extreme" limitation under the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace ("CPP"); and (4) adapting or managing oneself. E.g., Thompson v. Saul, 470 F. Supp. 3d 909, 912 (E.D. Wis. 2020). There is no Listing specifically applicable to migraine headaches, but the agency routinely considers that impairment under the Listing for epilepsy, requiring the claimant to demonstrate migraines of the severity and frequency of the seizures referenced in that section. See, e.g., Cooper v. Berryhill, 244 F. Supp. 3d 824, 828-29 (S.D. Ill. 2017).

If the claimant's impairments do not meet or equal a Listing, the ALJ proceeds to step four, determining whether the claimant can, given her residual functional capacity ("RFC"), still perform her past relevant work. Id. § 404.1520(a)(4)(iv). RFC is the most

the claimant can still do, on a regular and continuing basis, despite the physical and mental limitations caused by her impairments.  Id. § 404.1545(a)(1).

Finally, if the claimant cannot  perform her past work, at step five the ALJ considers whether she can, given her age, education, work experience, and RFC, make the adjustment to other jobs existing in significant numbers in the national economy.  Id. §§ 404.1520(a)(4)(v), 404.1520(g).  ALJs typically obtain testimony from a vocational expert ("VE") to assess whether there are a significant number of jobs in the economy the claimant can still do.  Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009).

## B.    Standard of Review

The court will uphold an ALJ's decision if it is supported by substantial evidence, uses the correct legal standards, and contains an accurate and logical bridge from the evidence to the conclusions.   Jeske v. Saul, 955 F.3d 583, 587 (7th Cir. 2020). "Substantial evidence" means evidence a reasonable mind might accept as adequate to support a conclusion.  Lothridge v. Saul, 984 F.3d 1227, 1232 (7th Cir. 2021).  Legal conclusions are reviewed de novo, Scrogham v. Colvin, 765 F.3d 685, 695 (7th Cir. 2014), so if the ALJ commits an error of law reversal is required without regard to the volume of evidence in support of the factual findings, Schoenfeld v. Apfel, 237 F.3d 788, 796 (7th Cir. 2001).

While the ALJ need not in building the requisite bridge evaluate in writing every piece of evidence in the record, he must sufficiently articulate his assessment of the evidence to assure the court that he considered the important evidence and to enable the court to trace the path of his reasoning.  Rohan v. Chater, 98 F.3d 966, 971 (7th Cir. 1996). The court limits its review to the rationale articulated by the ALJ, Brown v. Colvin, 845

F.3d 247, 251 (7th Cir. 2016), but reads the decision as a whole and with common sense in determining whether the ALJ made the necessary findings, Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015).

## II. FACTS AND BACKGROUND

### A.    Plaintiff's Application and Agency Decisions

Plaintiff applied for benefits in May 2017, alleging that she became disabled as of September 30, 2016 (Tr. at 258) due to severe migraines, probable MS, Ehlers-Danlos syndrome, arthritis in the hands, cervical spine problems, post-laminectomy syndrome of the lumbar spine, carpal tunnel syndrome, depression, anxiety, and chronic pain syndrome (Tr. at 297).  She reported past employment as a retail manager at a clothing store from October 1997 to May 2010 and a bank teller from September 2012 to September 2016.  (Tr. at 299, 317.)

In a function report, plaintiff reported daily headaches and an average of two to three migraines per week lasting one to two days.  She also reported severe low back pain, which caused numbness and tingling in her legs and resulted in several falls.  She further reported extreme fatigue, dizziness, and balance problems, as well as severe depression, anxiety, and panic attacks.  (Tr. at 307.)  Plaintiff indicated that family members did the household chores, and she rarely went out alone because she could not drive due to migraines and medications.  (Tr. at 309-10.)  She reported that she could walk around the block, pay attention for 20 minutes depending on the severity of her headache, and could not tolerate stress or changes in routine.  (Tr. at 312-13.)  In a physical activities addendum, plaintiff wrote that she could continuously sit for 15 minutes,

stand for 10 minutes, and walk for 15 minutes, and in a day sit for two hours, stand for one hour, and walk for two hours.  (Tr. at 315.)

The agency denied the application initially on August 22, 2017 (Tr. at 137, 184), based on the review of George Walcott, M.D., who opined that plaintiff could perform sedentary work with no exposure to heights or hazards (Tr. at 146, 150-51), and Susan Donahoo, Psy.D., who opined that plaintiff could perform the basic mental demands of unskilled work (Tr. at 153).   Under the paragraph B criteria of the mental impairment Listings, Dr. Donahoo found mild limitation in understanding, remembering, or applying information; no limitation in interacting with others; moderate limitation in CPP; and mild limitation in adapting or managing oneself.  (Tr. at 148.)  In her mental RFC assessment, Dr. Donahoo found moderate limitation in the ability to maintain attention and concentration for extended periods (Tr. at 151), and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, explaining that these the difficulties were due to symptoms of depression, anxiety and pain (Tr. at 152).   Dr. Donahoo also found moderate limitation in the ability to respond appropriately to changes in the work setting, explaining that plaintiff "would do best at a job that has consistent duties and expectations."  (Tr. at 152.)

Plaintiff requested reconsideration (Tr. at 193), but on February 7, 2018 (Tr. at 179, 194) the agency maintained the denial based on the reviews of Vicki Warren, Ph.D., who agreed with Dr. Donahoo's assessment (Tr. at 169, 174-76), and Steve McKee, M.D., who opined that plaintiff could perform sedentary work with limited handling on the right (Tr. at 171-73).  Plaintiff then requested a hearing before an ALJ.  (Tr. at 253.)

**B.     Hearing**

On March 21, 2019, plaintiff appeared with a non-attorney representative for her hearing before the ALJ.  The ALJ also summoned a VE to offer testimony on jobs plaintiff might be able to do.  (Tr. at 91.)

Plaintiff testified that she lived in a two-story home with her husband and two children, ages 20 and 17; her bedroom was on the first floor.  (Tr. at 107, 118.)  Her husband worked, but one of the children was usually home with her.  (Tr. at 119.)  She had a college degree in marketing and business management.  (Tr. at 107.)

Plaintiff testified that she could no longer work due to severe low back pain and migraines.  (Tr. at 108.)  She found it difficult to stand for longer than 15-20 minutes.  (Tr. at 108.)  Because of arthritis, she found it difficult to hold objects, such as a pencil or utensil.  (Tr. at 108-09.)  While sitting, she experienced shooting pain going down her legs.  Because of Ehlers-Danlos syndrome, she bruised easily and experienced joint pain and difficulty healing.  Her migraines affected her concentration; when experiencing one, she needed to go to a dark, quiet room.  (Tr. at 109.)  She previously kept a migraine log but no longer did.  (Tr. at 111.)  She further testified that within the past year she had developed hip pain.  (Tr. at 111-12.)

Plaintiff testified that she could lift no more than 10 pounds, walk around the block, and sit for 20-30 minutes before she needed to stand.  (Tr. at 112-13.)  She indicated that she could pick up a paperclip, but it was difficult; sometimes her hand would just give out. Her right hand was worse than the left.  (Tr. at 113.)  She described tingling and numbness in her hands and overall weakness.  (Tr. at 120.)  She also complained of fatigue, with her body feeling like a wet noodle.  (Tr. at 121.)

Plaintiff testified that she experienced neck pain, which she said averaged 7 on a 0-10 scale. (Tr. at 122.) She rated her headache pain at a 9 and her low back pain at 8. (Tr. at 123.)

Plaintiff testified that she was taking preventative medication for her migraines, which did not help. (Tr. at 113-14.) She did notice some improvement with the monthly shot she had been on for the past four months. (Tr. at 114.) She indicated that she experienced one or two migraines the first week after the shot, then three or four in the second week; by the third or fourth week, she could not wait to have her shot again. The migraines caused severe nausea, dizziness, and auras. (Tr. at 114.)

Plaintiff testified that for her other physical problems she took ibuprofen. (Tr. at 114-15.) She stated that the only thing that helped her low back pain was lying flat; she had tried heat, icepacks, and lots of ibuprofen. (Tr. at 123.) She had also tried acupuncture for the migraines and back pain, which helped very temporarily. (Tr. at 123-24.)

Plaintiff testified that her husband and children did most household chores. She did not cook but could dress and bathe herself. She had a driver's license but drove only when no one was available to take her. (Tr. at 115.) They had a dog, but she did not walk him. (Tr. at 117.)

Asked about the mental problems affecting her ability to work, plaintiff mentioned lack of concentration. "I get tunnel vision quite a bit. I'm pretty much staring off into nowhere." (Tr. at 116.) She related this to pain and psychological conditions. She indicated she had trouble completing tasks, such as putting things away. (Tr. at 116.) She testified that she had friends and got along with them okay. (Tr. at 117.) For her

mental impairments, she took Lexapro, which helped with anxiety. (Tr. at 117.) Plaintiff testified that she was also seeing a therapist, which also helped. (Tr. at 117-18.)

The VE classified plaintiff's past jobs as a teller and retail store manager as light, skilled positions. (Tr. at 130.) The ALJ then asked a hypothetical question, assuming a person of plaintiff's age, education, and experience, limited to sedentary work, never climbing ladders, ropes or scaffolds, or crawling; climbing ramps and stairs, balancing, stooping, crouching, and kneeling frequently; handling with the right (dominant) hand frequently; and avoiding use of dangerous moving machinery and exposure to unprotected heights. Mentally, the person was limited to simple, routine tasks performed in a work environment free from fast-paced production requirements, involving only simple work-related decisions, with few if any workplace changes. (Tr. at 131.) The VE testified that such a person could not perform plaintiff's past jobs, which were defined as light. (Tr. at 131.) However, the person could do other jobs, such as final assembler, table worker, and masker. (Tr. at 131-32.) If the person were further limited to understanding, carrying out, and remembering no more than simple instructions, the answer was the same. (Tr. at 132-33.)

However, if the person would be off task up to 25% of the workday, would need two extra 15-minute breaks, or would have three unscheduled absences per month, that would be work preclusive. (Tr. at 133.) Employers would not allow more than one unscheduled absence per month, being off task 15% of the time or more, or additional breaks. (Tr. at 134.)

**C.    ALJ's Decision**

On June 27, 2019, the ALJ issued an unfavorable decision.  (Tr. at 25.)  Following the five-step evaluation process, the ALJ determined:

(1) that plaintiff had not engaged in substantial gainful activity since September 30, 2016, the alleged onset date (Tr. at 30);

(2) that she suffered from the severe impairments of degenerative disc disease of the cervical spine, post-laminectomy syndrome of the lumbar spine, inflammatory arthritis, migraine headaches, depressive and anxiety disorders, and somatic disorders (Tr. at 30-31);

(3) that none of those impairments met or equaled the severity of a Listing (Tr. at 32-34);

(4) that plaintiff had the RFC to perform sedentary work, with frequent balancing, crouching, kneeling, stooping, and climbing ramps and stairs; frequent handling with the right hand; simple, routine tasks, in an environment free of fast-paced production requirements; and performing work involving only simple work-related decisions and few, if any, workplace changes (Tr at 34-35), which precluded performance of her past jobs (Tr. 43);

(5) but that plaintiff could perform other jobs existing in significant numbers, as identified by the VE, including final assembler, table worker, and masker. (Tr. at 43-44.)

In determining RFC, the ALJ considered plaintiff's statements regarding her symptoms and limitations.  (Tr. at 35.)  Forty-four years old as of the alleged onset date, with a college education and work experience as a teller and retail store manager, plaintiff alleged disability due to severe migraines, arthritis, cervical and lumbar spine problems,

chronic pain syndrome, depression, and anxiety.  In her pre-hearing reports, she alleged that these impairments affected her abilities to lift, squat, bend, stand, reach, walk, sit, remember, complete tasks, concentrate, understand, follow instructions, and use her hands.  She reported that she could sit for 15 minutes at a time and a total of two hours a day, stand for 10 minutes at a time and a total of one hour a day, and walk for 15 minutes at a time and total of two hours per day.  (Tr. at 35.)  She further reported difficulties tending to her daily activities, indicating that she did no household chores and almost always had someone with her when she went out because she could not drive due to migraines and the medications she took.  (Tr. at 35.)

At the hearing, plaintiff testified that she lived with her husband and two children (one an adult, the other a teen), in a two-story home with her bedroom on the first floor.  (Tr. at 35.)  She stated that she could not work due to severe back pain, which prevented her from standing longer than 15-20 minutes and that she experienced pain down her legs.  (Tr. at 35-36.)  She also alleged difficulty holding objects due to arthritis.  She indicated that migraines affected her concentration, and that when she had one she experienced nausea and needed to lie down in a dark, quiet room.  She stated that she could lift about 10 pounds, walk around the block, sit for about 20-30 minutes at most, and grasp paperclips unless her joints were very swollen.  While she could bathe and dress herself, she did not do household chores or cook.  She further testified that due to her mental impairments she lacked concentration, experienced tunnel vision staring off into nowhere, and had trouble completing tasks.  (Tr. at 36.)

The ALJ then reviewed the medical evidence, the majority of which related to treatment for migraines, including an occipital nerve block, acupuncture, and medications.

The records included a long list of failed medications. (Tr. at 37.) The ALJ concluded that the medical evidence documented a number of physical impairments, which the ALJ accommodated by limiting plaintiff to sedentary work with no more than frequent postural movements and handling with the right hand. (Tr. at 37.) The ALJ accommodated plaintiff's mental impairments and related "moderate" limitations by limiting her to unskilled work requiring her to perform simple, routine tasks in an environment free of fast-paced production requirements and work involving only simple work-related decisions and few, if any, workplace changes. (Tr. at 38.)

The ALJ found that while plaintiff's impairments could reasonably be expected to cause the symptoms plaintiff alleged, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the evidence of record. (Tr. at 38.) Regarding her lumbar spine symptoms, the ALJ noted that plaintiff's treatment during the relevant period had been conservative, imaging reports documented "mild" findings, and plaintiff consistently demonstrated good functioning on examination despite her alleged symptoms. (Tr. at 38.) Regarding her alleged hand symptoms, the ALJ noted that plaintiff consistently demonstrated good function on examination, the record did not contain a definitive diagnosis, and treatment had been conservative. (Tr. at 39-40.) As for her migraines, the ALJ noted that, although it took time, plaintiff eventually benefitted from treatment; plaintiff's complaints of severe pain seemed to be out of proportion with the observations of her providers (e.g., no apparent distress, negative for pain behavior); and her complaints of daily migraines differed from her migraine log, with most of the entries noting non-migraine headaches she rated as mild, most of the migraines rated as moderate, and just one migraine rated as severe.

(Tr. at 40.) Finally, the ALJ found that the record failed to fully substantiate plaintiff's allegations of disabling mental health symptoms, noting that she consistently demonstrated good function on examination, with intact memory, normal attention span and concentration, and grossly intact cognition; the medical evidence documented no hospitalizations or similarly intensive treatment; and in May 2018 a counselor stated plaintiff's treatment was complete and discharged her from his care, noting euthymic mood and congruent affect. (Tr. at 41.)

The ALJ also considered the opinion evidence, finding persuasive the reports of the agency reviewing physicians, Drs. Walcott and McKee, who concluded that plaintiff retained the capacity for sedentary work. The ALJ found limitation to sedentary work warranted given the diagnoses of degenerative disc disease of the cervical spine, post-laminectomy syndrome of the lumbar spine, inflammatory arthritis, and migraines. However, further limitation, such as the need for time off task or work absences, was not warranted as the medical evidence showed mild diagnostic findings, conservative treatment, and good function on examination. (Tr. at 41.)

The ALJ also found persuasive the opinions of the agency reviewing psychologists, Drs. Donahoo and Warren, who concluded that plaintiff had mild limitations in the ability to understand, remember, and apply information; no limitation in the ability to interact with others; moderate limitations in CPP; and mild limitations in the ability to adapt or manage oneself. They further opined that plaintiff would do best in a job with consistent duties and expectations. The ALJ found these opinions consistent with the medical evidence of record, which showed good mental and social function on examination, e.g., normal mood, affect, memory, behavior, and speech; pleasant/cooperative demeanor;

orientation to time, place, and person; normal eye contact, unimpaired memory and problem solving skills; and no demonstrated abnormalities of attention or thought content. (Tr. at 41.)

The record contained a number of statements from plaintiff's treating physicians indicating that plaintiff was disabled due to her migraine headaches, but the ALJ found those opinions unpersuasive, as they commented on an issue reserved to the Commissioner, the doctors offered no description of plaintiff's functional limitations/capacity, and the medical evidence contained no diagnostic or clinical findings in support. (Tr. at 42.) The record also contained an opinion from plaintiff's treating psychologist, Dr. Jennifer Giesige, endorsing marked or serious limitations in several areas of understanding, remembering, and applying information; extreme limitation or inability to function in the areas of maintaining attention and concentration for a two-hour segment and performing at a consistent pace without interruption from symptoms or an unreasonable number of breaks; and marked or serious limitations in the ability to manage psychologically based symptoms, respond to demands, and respond appropriately to changes in a routine work setting. Dr. Giesige further opined that plaintiff would miss more than four days of work per month. (Tr. at 42-43.) The ALJ concluded: "The opinion is unpersuasive as it is inconsistent with the medical evidence of record, which shows largely normal mental status exams[.]" (Tr. at 43.)

Plaintiff sought review of the ALJ's decision by the Appeals Council, but on May 4, 2020, the Council denied her request (Tr. at 1), making the ALJ's decision the final word from the Commissioner on plaintiff's application. See Jozefyk v. Berryhill, 923 F.3d 492, 496 (7th Cir. 2019). This action followed.

### III.  DISCUSSION

Plaintiff alleges that the ALJ failed to adequately account for the CPP limitations found by the agency psychological consultants and erred in various respects in assessing her migraine headaches.   I address each argument in turn.

### A.     Agency Psychologists' Opinions

#### 1.     ALJ's Findings

The ALJ addressed plaintiff's mental limitations at several points in his decision. In discussing the mental impairment Listings, the ALJ evaluated the four paragraph B criteria.  (Tr. at 33.)  In finding a mild limitation in understanding, remembering, or applying information, the ALJ noted that plaintiff alleged problems with memory, concentration, and understanding information; however, the treatment records did not show problems with attention, concentration, cognition, or memory.  (Tr. at 33.)  Plaintiff alleged no problems getting along with others, nor did the medical evidence suggest any such problems; the ALJ accordingly found no limitation in interacting with others.   In finding a moderate limitation in CPP, the ALJ noted plaintiff's contention that she had trouble completing tasks and concentrating; however, clinical findings showed that plaintiff demonstrated good attention and concentration, as well as unimpaired cognition and thought process. (Tr. at 34.)  In finding a mild limitation in adapting or managing oneself, the ALJ balanced plaintiff's contention that she did not handle stress or changes in routine very well against the records showing appropriate judgment and insight, cooperative behavior, and no ongoing abnormalities of dress or grooming.  (Tr. at 34.)

In determining RFC, the ALJ accommodated plaintiff's mental impairments and related "moderate" limitations by limiting her to unskilled work requiring her to perform

simple, routine tasks in an environment free of fast-paced production requirements and work involving only simple work-related decisions and few, if any, workplace changes. (Tr. at 38.)  In discounting plaintiff's allegations of disabling mental health symptoms, the ALJ noted that plaintiff consistently demonstrated good function on examination; the medical evidence documented no hospitalizations or similarly intensive treatment; and in May 2018 plaintiff's counselor discharged her from his care, noting euthymic mood and congruent affect.  (Tr. at 41.)

Finally, in discussing the opinion evidence, the ALJ credited the opinions of the agency reviewing psychologists, Drs. Donahoo and Warren, who concluded that plaintiff had mild limitations in the ability to understand, remember, and apply information; no limitation in the ability to interact with others; moderate limitations in CPP; and mild limitations in the ability to adapt or manage oneself.  The ALJ found these opinions consistent with the medical evidence of record, which showed good mental and social function on examination.  (Tr. at 41.)  The ALJ found unpersuasive the opinion from Dr. Giesige, plaintiff's treating psychiatrist, suggesting greater limitations, finding it inconsistent with the medical evidence of record, which showed largely normal mental status exams.  (Tr. at 43.)

## 2.    Arguments of the Parties

Plaintiff does not challenge the ALJ's rejection of Dr. Giesige's opinion.  Rather, she bases her argument on certain limitations found by the agency psychological consultants.

As indicated, the psychological consultant at the initial level, Dr. Donahoo, concluded that plaintiff was "capable of performing the basic mental demands of unskilled

work." (Tr. at 153.) Earlier in her report, Dr. Donahoo found "moderate" limitation in the ability to maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting. (Tr. at 151-52.) She noted in the CPP narrative section that plaintiff "may have diff w/ above noted limitations d/t sx of depression, anxiety and pain." (Tr. at 152.) In the adaptation narrative, she wrote that plaintiff "would do best at a job that has consistent duties and expectations." (Tr. at 152.) Dr. Warren, the consultant at the reconsideration level, agreed with these findings. (Tr. at 174-75.)

Plaintiff indicates that, while the ALJ gave the consultants' opinions weight, he failed to include in the RFC the specific "moderate" limitations they endorsed. (Pl.'s Br. at 8.) Plaintiff further argues that Dr. Donahoo's narrative conclusion is erroneous. She notes that, under agency policy, the requirements for unskilled work include the ability to understand, carry out, and remember simple instructions; make simple work-related decisions; respond appropriately to co-workers; and deal with changes in the routine setting. More specifically, the claimant must be able to maintain attention for two-hour segments, complete a normal workday without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number of breaks, and respond appropriately to changes in a routine work setting. (Pl.'s Br. at 8.) Plaintiff notes that Dr. Donahoo found moderate limitations in each of these areas, meaning there is some degree of corresponding limitation impacting the ability to perform unskilled work. (Pl.'s Br. at 8-9.) She contends that a consultant cannot simply assume that failure to

meet a Listing means the person can do unskilled work, and the MRFC narrative must address the specific limitations found in the earlier sections of the report.  (Pl.'s Br. at 9.) She concludes that the consultants failed to explain why limitations associated with attention and concentration for extended periods, completing a normal workday, and maintaining appropriate work pace were unnecessary.  (Pl.'s Br. at 10.)

In arguing that the ALJ made an error of law in this regard, plaintiff relies on the agency's Program Operations Manual System ("POMS").  (Pl.'s Br at 10-11.)  The POMS "is for the internal use of agency employees, has no legal force, and cannot bind the agency, let alone the district court."  Flint v. Colvin, 543 Fed. Appx. 598, 600 (7th Cir. 2013) (citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981); Pulley ex rel. Pulley v. Bowen, 817 F.2d 453, 454 (7th Cir. 1987); Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (2d Cir. 2007)).[1]  As plaintiff goes on to note, however (Pl.'s Br. at 12), Seventh Circuit caselaw generally requires the ALJ to account for "moderate" limitations noted in the earlier sections of a psychological consultant's report.  See DeCamp v. Berryhill, 916 F.3d 671, 676 (7th Cir. 2019) ("[E]ven if an ALJ may rely on a narrative explanation, the ALJ

---

[1] In response, the Commissioner notes that the POMS never says that a moderate rating in any category on the worksheet corresponds to any specific mental limitation.  (Def.'s Br. at 11.)  Plaintiff argues that the failure of the agency consultants to follow the POMS requirements would normally require the ALJ to give their opinions less weight.  (Pl.'s Br. at 12.)  In reply, plaintiff also discusses the "new" regulation for evaluating medical opinions, under which supportability and consistency are the most important factors.  She argues that supportability should be deemed suspect when a consultant endorses moderate limitations in section I but then fails to either include such limitations in the narrative or explain why such a limitation is not warranted.  (Pl.'s Rep. Br. at 4.)  I agree that an ALJ should consider any explanation provided by the source, and that opinions lacking such support will generally be entitled to less weight; this is consistent with the new regulation, applicable to claims like this one, filed after March 2017.  See 20 CF.R. 404.1520c(c)(1).  The ALJ cited the new regulation in this case.  (Tr. at 35.)  I address this issue further in note 2, below.

still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."); Varga v. Colvin, 794 F.3d 809, 816 (7th Cir. 2015) ("Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored."). The Seventh Circuit has further held that limiting a claimant to "unskilled work" or "simple, repetitive tasks" will not necessarily account for problems of concentration, persistence, or pace. Crump v. Saul, 932 F.3d 567, 570 (7th Cir. 2019); see Varga, 794 F.3d at 814 ("[W]hether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work.").

Plaintiff notes that if the consultant does not address the worksheet findings in the narrative, the ALJ must address them in the RFC and the hypothetical questions he poses to the VE. See Mischler v. Berryhill, 766 Fed. Appx. 369, 376-77 (7th Cir. (2019) ("Because [the consultant's] assessment fails to account for all of Mischler's limitations, the ALJ was required to account for them himself—in the hypothetical and RFC. But he did not."). Plaintiff contends that, since the ALJ did not do so here, remand is required. (Pl.'s Br. at 14.) She notes that the ALJ provided limitations to (1) simple, routine tasks; (2) no fast-paced production requirements; (3) simple work-related decisions; and (4) few, if any, workplace changes. (Tr. at 34-35; see also Tr. at 131, hypothetical to the VE containing the same limitations.) The consultants endorsed limitations in (1) maintaining attention and concentration for extended periods, (2) completing a normal workday and workweek without interruptions from psychologically based symptoms, (3) performing at

a consistent pace without an unreasonable number and length of rest periods, and (4) responding appropriately to changes in the work setting. (Tr. at 151-52.) Plaintiff acknowledges that the ALJ's fourth limitation adequately responds to the consultants' fourth finding, but she contends that the other three limitations are not adequately addressed. (Pl.'s Br. at 15.) She specifically faults the ALJ for failing to address her work pace limitations. See O'Connor-Spinner v. Colvin, 832 F.3d 690, 698 (7th Cir. 2016) ("[T]he Commissioner has not cited, nor have we found, any authority supporting the ALJ's speculation that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including, as part of the claimant's mental residual functional capacity, a moderate limitation on concentration, persistence, and pace."); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002) ("Hypothetical questions posed to vocational experts ordinarily must include all limitations supported by medical evidence in the record.").

The Commissioner responds that the ALJ limited plaintiff to mentally undemanding work requiring limited ability to concentrate, and plaintiff cites no evidence suggesting greater CPP limitations than the ALJ found. (Def.'s Br. at 4-5.) Nor does plaintiff challenge the ALJ's observation that clinical findings consistently showed good attention and concentration, as well as unimpaired cognition and thought process. (Tr. at 34.) Indeed, the Commissioner notes, plaintiff herself confirmed to providers that her concentration was intact or OK. (Def.'s Br. at 5, citing Tr. at 1210, 2151.) Finally, the agency psychological experts opined that plaintiff did not have disabling concentration impairments and, indeed, had better functioning than the ALJ ultimately found. Rather than simply limiting plaintiff to unskilled work, as the consultants suggested, the ALJ

added limitations regarding pace, decision making, and workplace changes.  (Def.'s Br. at 5.)

The Commissioner further argues that, while plaintiff nitpicks at aspects of the psychological consultants' reports, she fails to demonstrate reversible error.  First, the Commissioner notes that a recent regulatory change clarified that a "moderate" rating means that the claimant's ability to function in that area "independently, appropriately, effectively and on a sustained basis is fair."  (Def.'s Br. at 6, citing 20 C.F.R. Pt. 404, Subpart P, App. 1 § 12.00(F)(2).)  Since "fair" is generally understood to mean "sufficient," "adequate," or "average," a moderate rating does not suggest a disabling limitation or require greater limitations than described in the mental RFC here.  (Def.'s Br. at 6-7.)

Second, the Commissioner notes that in several recent decisions the Seventh Circuit has deemphasized the importance of the worksheet compared to the narrative opinion and affirmed where the ALJ adopted limitations similar to those used here.  (Def.'s Br. at 7, citing Urbanek v. Saul, 796 Fed. Appx. 910 (7th Cir. 2019); Pytlewski v. Saul, 791 Fed. Appx. 611 (7th Cir. 2019); Dudley v. Berryhill, 773 Fed. Appx. 838 (7th Cir 2019).)  In Urbanek, for instance, the court noted, "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they adequately account for the claimant's demonstrated psychological symptoms found in the record."  796 Fed. Appx. at 914 (internal quote marks omitted).  The court also declined to reverse where the agency doctors checked boxes indicating that the claimant had moderate limitations in areas of CPP but concluded in their narrative opinions that he could sustain the basic mental demands of unskilled work, noting that while checklist observations cannot be

ignored they are perhaps less useful to an ALJ than a doctor's narrative summary and do not outweigh the narrative opinions.  Id. at 915.

The Commissioner characterizes as "unimportant" the consultants' statement that plaintiff may have difficulty in certain areas due to symptoms of depression, anxiety and pain.  (Def.'s Br. at 8, citing Tr. at 152, 174.)  Medical opinions are supposed to clarify what the claimant is still able to do despite her impairments, and a doctor's statement is of minimal value unless it clarifies the extent of a claimant's limitations.  (Def.'s Br. at 8-9.)  Here, the consultants did not clarify the extent of the difficulty.  But they did, later in their reports, indicate that plaintiff's mental impairments did not preclude her from performing unskilled work.  (Def.'s Br. at 9.)[2]

Finally, the Commissioner notes that plaintiff does not specify supportable limitations indicated by the moderate ratings that were omitted from the RFC.  (Def.'s Br at 9-10, citing Jozefyk, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none."); Dudley, 773 Fed. Appx. at 842 ("Critically, Dudley did not identify any limitations that the ALJ omitted and should have included in the hypothetical question.").)  Plaintiff reiterates the moderate limitations noted by the consultants, but she does not specify work-related limitations consistent with these worksheet notations.

---

[2] Plaintiff argues that the ALJ should not have found the consultants' opinions persuasive due to their vagueness and failure to include the section I limitations in the narrative.  (Pl.'s Br. at 11-13; Pl.'s Rep. Br. at 4.)  In response, the Commissioner notes that the ALJ explained why the evidence, including the consistently normal mental status exams, supported the consultants' opinions that plaintiff did not have disabling mental limitations. Plaintiff makes no argument that the ALJ unreasonably assessed the medical evidence, nor does she argue that the ALJ should have found some other opinion more persuasive. (Def.'s Br. at 11.)

(Def.'s Br. at 10, citing <u>Thompson</u>, 470 F. Supp. 3d at 927 ("At steps four and five, ALJs do not ordinarily phrase mental restrictions in terms of a 'moderate' or 'marked' limitation. Rather, they usually attempt to translate such a limitation into job-related restrictions that a VE is likely to understand.") (internal quote marks omitted).) The Commissioner wonders what limitations plaintiff <u>could</u> propose, given the regulatory clarification that a moderate limitation does not generally indicate disabling limitation and the highly restrictive mental RFC the ALJ adopted here, requiring only that plaintiff concentrate well enough to do simple work at a relaxed pace, make simple decisions, and adapt to few changes. (Def.'s Br. at 10.)

In reply, plaintiff argues that the ALJ should have included in both the hypothetical and the RFC the moderate limitations in maintaining attention and concentration for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (Pl.'s Rep. Br. at 5.) Plaintiff notes that, while it is true the consultants did not say her concentration limitation was disabling, she does not argue her mental impairments alone are disabling but rather that the resulting limitations should be considered in combination with her other restrictions. (Pl.'s Rep. Br. at 6.) She further argues that it strains logic to conclude that a person with noticeable limitations in concentration and attendance can perform the full range of unskilled work. (Pl.'s Br. at 6.) While the Commissioner asserts that the section I findings are a mere worksheet, the caselaw requires remand when the ALJ ignores such significant evidence. (Pl.'s Rep. Br. at 6.) Finally, plaintiff faults the Commissioner for citing unpublished cases in which the flaws in the consultants' findings were not as well defined. She further notes

that Urbanek is distinguishable as it involved the testimony of a medical expert at the hearing, not a narrative finding by a reviewing consultant at earlier stages of the case. (Pl.'s Rep. Br. at 7.)

### 3. Analysis

Yet again, the court is confronted with a CPP argument in a social security case. See Thompson, 470 F. Supp. 3d at 927 (discussing the prevalence of such arguments). The Seventh Circuit has frequently reversed based on such arguments under the Stewart/O'Connor-Spinner line of cases, see, e.g., Crump, 932 F.3d at 570; Winsted v. Berryhill, 923 F.3d 472, 476-77 (7th Cir. 2019); DeCamp, 916 F.3d at 675-76; Moreno v. Berryhill, 882 F.3d 722, 730 (7th Cir. 2018), amended on reh'g, 2018 U.S. App. LEXIS 9296 (7th Cir. Apr. 13, 2018); Varga, 794 F.3d at 813; Yurt v. Colvin, 758 F.3d 850, 858-59 (7th Cir. 2014); O'Connor-Spinner v. Astrue, 627 F.3d 614, 619-620 (7th Cir. 2010); Stewart v. Astrue, 561 F.3d 679, 684 (7th Cir. 2009), as has this court, see, e.g., Seals v. Saul, No. 19-C-1244, 2020 U.S. Dist. LEXIS 159707, at *33-36 (E.D. Wis. Sept. 2, 2020); Swoverland v. Saul, No. 19-C-824, 2020 U.S. Dist. LEXIS 60926, at *38-43 (E.D. Wis. Apr. 7, 2020); Hoeppner v. Berryhill, 399 F. Supp. 3d 771, 775-79 (E.D. Wis. 2019).

While the Seventh Circuit has insisted that the ALJ need not use any "magic words" in incorporating CPP limitations into the hypothetical posed to the VE and in formulating RFC, Crump, 932 F.3d at 570, the court has found deficient many of the formulations commonly used by ALJs, e.g., "simple, routine, repetitive tasks with few workplace changes," id. at 569-70; jobs without "strict production quotas or a fast pace," DeCamp, 916 F.3d at 675-76; "routine work" involving "simple work instructions," "simple work place judgments," and "no more than occasional changes in the work setting," Moreno, 882

F.3d at 730; and work involving "simple, routine, or repetitive tasks in a work environment . . . free of fast paced production requirements, involving only simple work related decisions with few if any work place [sic] changes and no more than occasional interaction with coworkers or supervisors," <u>Varga</u>, 794 F.3d at 812.

This does not mean the Seventh Circuit <u>always</u> remands based on CPP arguments. In <u>Martin v. Saul</u>, 950 F.3d 369, 374 (7th Cir. 2020), for instance, the court rejected a CPP argument where the ALJ "showed her work" and addressed all three components of CPP in the RFC assessment. <u>See Thompson</u>, 470 F. Supp. 3d at 928 (discussing <u>Martin</u>). The court has also affirmed in cases where the claimant's CPP limitations were context or task specific, and the RFC restricted the claimant from those situations. <u>See, e.g.</u>, <u>Jozefyk</u>, 923 F.3d at 498 (affirming where the claimant's "impairments surface only when he is with other people or in a crowd," and the RFC "limited interactions with others"). The court has further held that in some cases "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination." <u>Burmester v. Berryhill</u>, 920 F.3d 507, 511 (7th Cir. 2019); <u>but see DeCamp</u>, 916 F.3d at 676 ("But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms."). Finally, the court has held that a CPP error may be harmless if the claimant fails to describe the additional limitations the ALJ should have included. <u>See, e.g.</u>, <u>Jozefyk</u>, 923 F.3d at 498.

As other judges of this court have noted, the Seventh Circuit has over the past two years affirmed, in unpublished orders, several ALJ decisions finding claimants capable of

simple, routine, and repetitive tasks despite moderate limitations in CPP.  See Herren v. Saul, No. 20-CV-156, 2021 U.S. Dist. LEXIS 60574, at *17 n.1 (E.D. Wis. Mar. 30, 2021) (collecting cases and noting that these decisions may suggest a shift away from DeCamp and Yurt); Guinta v. Saul, No. 19-C-1350, 2021 U.S. Dist. LEXIS 55571, at *25, *27 (E.D. Wis. Mar. 24, 2021) (finding it difficult to reconcile Urbanek with DeCamp and other published cases in this line of authority and hoping that "some clarity will eventually be brought to this area of law");[3] see also Gwendolyn B. v. Saul, No. 20-C-3244, 2021 U.S. Dist. LEXIS 86548, at *24 (N.D. Ill. May 6, 2021) (noting that the Seventh Circuit's guidance on this issue has been "somewhat nebulous").

As the Commissioner indicates in a supplemental notice of authority, last month the Seventh Circuit rejected, in a published decision, a claimant's argument that the consultants' narrative finding that he could perform at a consistent pace if engaged in simple, repetitive tasks conflicted with the consultants' "moderate" CPP checklist ratings. Pavlicek v. Saul, 994 F.3d 777, 783 (7th Cir. 2021).  The court first noted that an ALJ may rely on a consultant's narrative, so long as it adequately encapsulates and translates the checklist.  Id. (citing Varga, 794 F.3d at 816).  The court then cited the regulation defining a moderate limitation to mean that functioning in that area is "fair."  Id. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1).  The court reasoned that since "fair" does not mean "bad" or

---

[3] Urbanek, the case upon which the Commissioner primarily relies in his response brief, is, as plaintiff notes in reply, distinguishable on its facts.  In that case, the ALJ gave great weight to the opinion of a testifying consultant, who indicated that the claimant's concentration was sufficient to complete simple, routine tasks, 796 Fed. Appx. at 914, and only some weight to the opinions of the reviewing consultants, who checked boxes indicating the claimant had certain moderate limitations before stating in the narrative sections that he could "could sustain the basic mental demands of unskilled work," id. at 915.

"inadequate," "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." Id.[4]

Other than its reliance on the new regulation defining the term "moderate," I do not read Pavlicek as breaking new ground. Cf. O'Connor-Spinner, 832 F.3d at 698-99 (noting that, at that time, agency regulations did not quantify what is meant by a "moderate" restriction). Rather, the court relied on the line of cases holding that an ALJ may rely on a consultant's narrative so long as that narrative adequately addresses and incorporates the worksheet findings. The consultant in Pavlicek found moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, and completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest breaks. Pavlicek v. Saul, No. 19-cv-41-slc, 2020 U.S. Dist. LEXIS 76958, at *4 (W.D. Wis. May 1, 2020). Then, in the narrative portion of the report, the doctor wrote:

> The medical evidence available supports that the claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Also claimant maintains the ability to sustain attention throughout extended periods of time (up to 2 hours at a time). [Medical evidence] endorses that the claimant maintains the ability to perform at a consistent pace particularly if is engaged in a [sic] simple, repetitive tasks. [Medical evidence] supports that the claimant have [sic] an adequate ability to maintain an [sic] regular schedule.

---

[4] Later in the decision, the Pavlicek court rejected the claimant's argument that the hypothetical question failed to account for his CPP limitations. Id. at 784. The court found that substantial evidence supported the ALJ's conclusion that the restrictions in the hypothetical adequately addressed the "moderate" limitations in CPP, noting that the question included the same restrictions that the agency consultants stated would accommodate the claimant's limitations. Id. The court further stated that "it is 'unclear what kinds of work restrictions might address [Pavlicek's] limitations in concentration, persistence, or pace because he hypothesizes none.'" Id. at 784 (quoting Jozefyk, 923 F.3d at 498. The court thus suggested that any CPP error was harmless in that case.

Id. at *4-5.  Thus, the consultant in Pavlicek did not simply assert in the narrative that the claimant could, despite several moderate limitations, perform unskilled work.[5]

The CPP narrative here is not nearly so detailed.  As indicated, after endorsing several moderate CPP limitations, the consultants wrote: "Clmt may have diff w/ above noted limitations d/t sx of depression, anxiety and pain."  (Tr. at 152, 174.)  In the ultimate conclusion, the consultants indicated: "Overall, clmt assessed as capable of performing the basic mental demands of unskilled work."  (Tr. at 153.)  The consultants did not address why or how plaintiff could perform unskilled work despite the CPP difficulties they identified earlier in their reports.  Nor did the ALJ; as indicated above, the ALJ accommodated plaintiff's "moderate" limitations by limiting her to unskilled work requiring her to perform simple, routine tasks in an environment free of fast-paced production requirements and work involving only simple work-related decisions and few, if any, workplace changes.  (Tr. at 38.)  The Seventh Circuit has held that such restrictions will not necessarily capture a claimant's limitations in CPP.  See Varga, 794 F.3d at 814-15 (considering a nearly identical hypothetical/RFC).  The matter must be remanded for further consideration of plaintiff's CPP limitations.

_____

[5] The Pavlicek court did not limit or overrule (indeed, did not even cite) DeCamp, so I do not read the decision as setting forth a new rule that a consultant's narrative for unskilled work necessarily accounts for moderate CPP limitations noted earlier in the consultant's report.  Rather, I read the decision as holding that, where a consultant provides some explanation in the narrative, the ALJ may be able to rely on the consultant's conclusion. It would be helpful for the Seventh Circuit to provide guidance on what "more" consultants must say in their narratives and/or ALJs in their decisions to adequately translate moderate CPP limitations into an acceptable hypothetical/RFC.

**B.    Migraine Headaches**

**1.    ALJ's Findings**

At step three, the ALJ:

> considered [plaintiff's] migraines under listing 11.02.  Although this listing addresses epilepsy, it is the most closely analogous listed impairment. [Plaintiff's] impairment does not meet the severity requirements of listing 11.02B or D, as there is no evidence of migraines occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment; or occurring at least once every two weeks for at least three consecutive months despite adherence to treatment, and with a marked limitation of one of the following: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.

(Tr. at 32.)

In reviewing the medical evidence, the ALJ noted that most of the notes pertained to plaintiff's migraines, including various forms of treatment and a list of failed medications.  (Tr. at 37.)  In determining RFC, the ALJ considered plaintiff's statements regarding her migraines, noting that, although it took time, by May 2018 plaintiff reported benefit from treatment (Tr at 40, citing Tr. at 2506); plaintiff's complaints of severe pain were out of proportion with the observations of her providers (e.g., no apparent distress, negative for pain behavior) (Tr. at 40, citing Tr. at 1032, 1000-01, 996, 939); and her complaints of daily migraines differed from her migraine log regarding both frequency and severity (Tr. at 40, citing Tr. at 2870-78.)  In evaluating the opinion evidence, the ALJ found that limitations beyond those recommended by the agency consultants, such as the need for time off task or work absences, were not warranted as the medical evidence showed mild diagnostic findings, conservative treatment, and good function on examination.  (Tr. at 41.)

28

### 2.    Arguments of the Parties

Plaintiff argues that the ALJ overlooked numerous medical findings and statements in the record documenting chronic, severe migraines consistent with equaling the Listing. (Pl.'s Br. at 17-19.)  She acknowledges that the ALJ cited Listing 11.02, which the agency commonly consults in migraine cases, but she accuses the ALJ of engaging in a "perfunctory" analysis of its requirements.  (Pl.'s Br. at 20, citing Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir. 2006).)  As courts have noted, a claimant may satisfy section 11.02 if she experiences migraines with the debilitating frequency of the epileptic seizures required by the Listing, i.e., more than one medically severe migraine headache per week despite at least three months of prescribed treatment.  (Pl.'s Br. at 21, citing Snow v. Berryhill, No. 18-CV-434, 2019 U.S. Dist. LEXIS 71368, at *9-10 (N.D. Ind. Apr. 26, 2019).)  Plaintiff contends that the ALJ failed to consider the evidence cited in her brief supporting the required frequency.  (Pl.'s Br. at 22.)  Nor, she contends, did the ALJ explain why plaintiff did not meet the Listing's severity requirements.  (Pl.'s Br. at 22.) Finally, she contends that the ALJ could not have relied on the agency psychological consultants, since neither mentioned Listing 11.02 in their reports.  (Pl.'s Br. at 22-23.)

Plaintiff further argues that the ALJ failed to adequately account for her migraines in the RFC.  The ALJ relied on her apparent improvement in May 2018, but even if this finding were accurate, it did not account for the period from September 2016 (the alleged disability onset) to May 2018.  (Pl.'s Br. at 24.)  In any event, plaintiff notes, records from later in 2018 documented continued, severe headaches.  (Pl.'s Br. at 24-25.)  The ALJ also relied on the observations of plaintiff's providers, but on two of the occasions in which her providers noted "no acute distress" and "negative for pain behavior" plaintiff did not

claim to be experiencing an acute event but rather was following up regarding her pain medication. (Pl.'s Br. at 25-26; Tr. at 938-39, 996.) The ALJ further relied on the infrequency of migraines noted in plaintiff's daily headache log from December 2016 to March 2017. Plaintiff states that she does not allege daily migraines. Moreover, in that log she reported at least 11 episodes at level 3 (resulting in over 50% reduction in ability to function) or level 4 (could not perform activities at all). Plaintiff contends that, if she could not work during such episodes, her absences would exceed employer tolerance and thus lead to a disability finding. (Pl.'s Br. at 26.) Finally, plaintiff argues that the ALJ's credibility finding was erroneous, as he relied on a flawed reading of the record and failed to consider her subjective complaints under the requirements of SSR 16-3p. (Pl.'s Br. at 27-28.)

The Commissioner responds that the ALJ specifically accounted for plaintiff's migraine complaints, limiting her to sedentary work with further restrictions on the postures she could maintain and the environments in which she could work. The Commissioner points out that the ALJ's RFC was more favorable to plaintiff than either of the agency medical consultants found. (Def.'s Br. at 12.) The Commissioner further notes that plaintiff's argument hinges on acceptance of her subjective account, which the ALJ found unpersuasive, a finding the court may overturn only if it is "patently wrong." (Def.'s Br. at 12-13, citing Burmester, 920 F.3d at 510-11.) The Commissioner contends that such deference to the ALJ's credibility finding is particularly appropriate when the claimant alleges limitations related to migraines, the severity of which cannot be objectively measured. Here, the ALJ contrasted plaintiff's complaints of frequent, severe migraines with reports of effective treatment, third party observations of no acute distress,

and plaintiff's own log documenting less severe and frequent headaches. (Def.'s Br. at 13-14.)

Regarding the ALJ's finding of improvement in May 2018, the Commissioner notes that plaintiff never requested a "closed period" of disability from September 2016 to May 2018, despite being represented at the administrative level. Nor, the Commissioner responds, has plaintiff demonstrated that it was patently wrong for the ALJ to point out that her admitted improvement conflicted with her testimony of consistent, severe headaches. (Def.'s Br. at 15.)

The Commissioner also notes that at one of the cited visits during which her provider observed "no acute distress" plaintiff was reporting a headache at that time. (Tr. at 1000-01.) During another cited visit, plaintiff reported a "quite severe headache today" (Tr. at 1032), yet the provider observed she appeared only "slightly uncomfortable" (Tr. at 1033). Plaintiff relies on two visits during which she was not experiencing a headache, but at one of those appointments she reported "daily migraines." (Tr. at 938.) The Commissioner concludes that it was thus reasonable for the ALJ to cite these provider observations as evidence undermining plaintiff's statements. (Def.'s Br. at 16.)

Finally, while plaintiff contends that her headache log suggests a disabling level of absenteeism, the ALJ cited the log as evidence conflicting with her testimony, during which she alleged more frequent and more severe headaches than the log documented. Plaintiff does not dispute that the log conflicts with her testimony. (Def.'s Br. at 17.)

Ultimately, the Commissioner contends, the ALJ's finding did not need to be perfect. It was sufficient to cite evidence casting doubt on the accuracy of plaintiff's migraine complaints. (Def.'s Br. at 17.)

Regarding plaintiff's Listing claim, the Commissioner contends that the reasonableness of the ALJ's step three finding hinged on whether plaintiff presented persuasive evidence that she experienced severe migraines of the required frequency. The Commissioner contends that, having found plaintiff's testimony unpersuasive and contrary to the observations of her providers, the ALJ was not required to do more.  (Def.'s Br. at 18.)  In any event, the Commissioner contends that plaintiff failed to present evidence demonstrating that she meets all the criteria of the Listing.  (Def.'s Br. at 18-19.) While plaintiff recites her testimony and reports to her providers regarding the frequency of her migraines, she makes no effort to show that her migraines were of sufficient severity/duration and/or caused the necessary functional limitations.  (Def.'s Br. at 19-20.)  Finally, the Commissioner notes that the agency medical consultants considered plaintiff's migraines, finding that no Listings were met (Tr. at 146-47, 173), with the consultant at the reconsideration level, Dr. McKee, specifically indicating that plaintiff's "headaches [were] not listing level."  (Def.'s Br. at 20; Tr. at 173.)

In reply, plaintiff reiterates her contentions that she made a prima facie case that the Listing was equaled, that the ALJ's step three finding was perfunctory, and that the ALJ provided no reason why it was unnecessary to assess the Listing in full.  (Pl.'s Rep. Br. at 8-9.)  Plaintiff further accuses the Commissioner of making improper post-hoc arguments to prop up the ALJ's perfunctory analysis.  (Pl.'s Rep. Br. at 10.)  Because she made a prima facie case that her migraines occurred with the necessary frequency, she contends remand is required to reassess equivalence to the Listing.  (Pl.'s Rep. Br. at 11.)

### 3. Analysis

#### a. Listing

As indicated, the agency evaluates migraines at step three under Listing 11.02, the epilepsy section, which requires, in pertinent part:

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
> . . .
> OR
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>   1. Physical functioning (see 11.00G3a); or
>   2. Understanding, remembering, or applying information (see 11.00G3b(i));  or
>   3. Interacting with others (see 11.00G3b(ii)); or
>   4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
>   5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.

As courts have noted, it is at first blush hard to see how an epilepsy Listing requiring dyscognitive seizures, which involve an alteration of consciousness, is the most analogous provision for determining medical equivalence in a migraine headache case. Jandt v. Saul, No. 1:20-CV-00045-HBB, 2021 U.S. Dist. LEXIS 24534, at *14-15 (W.D. Ky. Feb. 9, 2021).  However, the agency has provided guidance regarding the duration and severity of headaches required to equal the Listing.  Id. at *15-17; Cooper, 244 F. Supp. 3d at 829.[6]  Consistent with this guidance, courts have noted that a person cannot

---

[6] For instance, the POMS provided as an example an individual who experiences migraines lasting 4 to 72 hours at least twice or more weekly with symptoms including aura, alteration of awareness, and intense headache with throbbing and severe pain, as well as nausea, photophobia, and the need to lie down in a dark and quiet room for relief. See Brandi M. v. Saul, No. 1:19-cv-02972, 2021 U.S. Dist. LEXIS 5630, at *17 (S.D. Ind.

be said to medically equal Listing 11.02 merely because she suffers headaches at least once a week for three months despite treatment; those headaches should also produce symptoms equivalent in severity to those attending a dyscognitive seizure.  Jozefyk v. Saul, No. 19-CV-1606, 2020 U.S. Dist. LEXIS 183703, at *8 (E.D. Wis. Oct. 2, 2020); see also Jandt, 2021 U.S. Dist. LEXIS 24534, at *19-20 (collecting cases discussing the duration and severity of the headaches required to equal the Listing); Ortiz v. Comm'r of Soc. Sec., No. 19-CV-0538MWP, 2020 U.S. Dist. LEXIS 179547, at *13-15 (W.D.N.Y. Sept. 29, 2020) (same); Melissa G. v. Saul, No. 18 CV 50218, 2019 U.S. Dist. LEXIS 156606, at *27 (N.D. Ill. Sept. 13, 2019) (noting that the claimant could equal the Listing if the severity and symptoms of her migraines are comparable to "dyscognitive seizures" as described in the regulations).

Plaintiff bases her Listing argument on a string of record citations documenting headaches between May 12, 2016, and December 6, 2018.  (Pl.'s Br. at 17-19.)  However, plaintiff does not demonstrate that the cited medical records document severe migraines at least once per week for at least three consecutive months, and she makes no attempt to use her headache logs to establish the necessary frequency.  (See Tr. at 2870-81.) She references her own statements regarding headache frequency, but as discussed above the ALJ found her statements about headache frequency and severity inconsistent

---

Jan. 12, 2021).  On August 26, 2019, after the ALJ issued his decision in this case, the agency issued SSR 19-4p, pertaining to headache disorders.  The Ruling applies to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date.  The agency expects that federal courts will review final decisions using the rules that were in effect at the time the ALJ issued the decision, but if a court reverses and remands a case for further administrative proceedings after the applicable date of the SSR, the agency will apply the SSR to the entire period at issue in the decision made on remand.  2019 SSR LEXIS 6, at *19 n.27.

with the record, including the log.  See Melissa M. v. Berryhill, No. 18-cv-1130, 2019 U.S. Dist. LEXIS 104371, at *30-31 (S.D. Ill. June 19, 2021) (denying Listing 11.02 claim where the ALJ rejected the claimant's description of the frequency of her headaches as inconsistent with other evidence in the record).

Further, while some of the record entries plaintiff cites discuss headache severity and duration, plaintiff develops no argument that these episodes were typically equivalent to the dyscognitive seizures referenced in Listing 11.02(B) and (D).  See Melissa M., 2019 U.S. Dist. LEXIS 104371, at *30 ("No medical evidence in the record suggests plaintiff ever had a migraine during which she suffered an alteration of consciousness or that otherwise approached a dyscognitive seizure.").  Nor does she attempt to show that her migraines caused the marked limitation required by 11.02(D).

Finally, while plaintiff notes that the agency psychological consultants did not consider her headaches under the Listings, the agency medical consultants did (Tr. at 146-47, 173), see Scheck v. Barnhart, 357 F.3d 697, 700 (7th Cir. 2004) ("The ALJ may properly rely upon the opinion of these medical experts."), and plaintiff cites no contrary opinion on medical equivalence.  See  Minnick v. Colvin, 775 F.3d 929, 935 (7th Cir. 2015) ("A finding of medical equivalence requires an expert's opinion on the issue.").  That the ALJ discussed the consultants' opinions in determining RFC rather than the Listings does not mean the court must ignore those opinions.  See Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (considering the ALJ's RFC discussion in rejecting a Listing claim); Wulz v. Saul, No. 20-cv-390-wmc, 2021 U.S. Dist. LEXIS 42651, at *14 (W.D. Wis. Mar. 8, 2021) ("[T]he Seventh Circuit has repeatedly held that 'when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how

the evidence shows the claimant's impairment is not presumptively disabling under the pertinent listing.'") (quoting Jeske, 955 F.3d at 590).  Plaintiff does not in her reply brief address the medical consultants' opinions, despite the Commissioner's reliance thereon in his response.

In sum, while the ALJ could have said more in his analysis of Listing 11.02, I cannot find reversible error at step three.  See Sosinski v. Saul, 811 Fed. App. 380, 381 (7th Cir. 2020) ("[E]ven if the ALJ does not offer such an analysis, we do not reverse if the claimant fails to show that he meets the criteria for that listing[.]") (citing Jeske, 955 F.3d at 589-91).

### b.    RFC/Credibility

While plaintiff takes issue with the reasons the ALJ provided for discounting her statements and concluding that no further limitations were warranted, she fails to demonstrate that those reasons rested on an unreasonable or erroneous reading of the record.  Her providers did make observations arguably inconsistent with her claims of severe pain, including during migraine episodes.  (Tr. at 1000-01, 1032-33.)  A provider did note in May 2018 that plaintiff "had benefit" from a pain management program, and that her migraines were "controlled" with the medication Rizatriptan.[7]  (Tr. at 2506.)  And plaintiff's headache log arguably conflicted with plaintiff's testimony regarding the frequency and severity of her headaches.  As the Commissioner notes, the ALJ cited the log as a piece of evidence inconsistent with plaintiff's statements, not as a benchmark for

---

[7] Plaintiff never asked the ALJ to consider a closed period from September 2016 to May 2018, and plaintiff cites no authority requiring the ALJ to consider such an award sua sponte under these circumstances.

anticipated absences. The ALJ specifically rejected the need for limitations related to time off task or work absences. (Tr. at 41.)

While it could be possible to read the record differently, I cannot say that any of these reasons are "patently wrong." See Deborah M. v. Saul, 994 F.3d 785, 789 (7th Cir. 2021); see also Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review."). As another judge of this court has noted:

> The ALJ is not required to cite conclusive evidence that a claimant is exaggerating his symptoms or lying in order to find his testimony insufficient to support his claim. Seldom, if ever, is conclusive evidence available in social security disability cases, or any other kind of case for that matter. Not many claimants, for example, describe daily activities that would be impossible to perform if they were truly disabled, and the Social Security Administration does not pay investigators to follow claimants around and see if they are really as functionally limited as they claim. Thus, instead of requiring conclusive evidence that a claimant is not telling the truth, the ALJ need only provide reasons based on the record as a whole why the claimant's testimony was not fully credited. The reasons provided by the ALJ must of course be logical, but they need not rule out any possibility that the claimant is truthful. Even in criminal cases where the burden of proof is beyond a reasonable doubt, conclusive evidence is not required to sustain the verdict.

Roovers v. Colvin, No. 14-C-370, 2015 U.S. Dist. LEXIS 8538, at *16-17 (E.D. Wis. Jan. 26, 2015).

Finally, plaintiff makes no claim that the ALJ erred in crediting the opinions of the agency medical consultants over those of her providers. Nor does she develop an argument that the ALJ failed to comply with SSR 16-3p; the ALJ cited the Ruling and applied its two-step process for symptom evaluation. (Tr. at 35.)

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that the ALJ's decision is reversed, and this matter is remanded for further proceedings consistent with this decision. The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of May, 2021.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge